United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GIOVANNY HERNAN ORTEGA,
    Petitioner,
    v.
DAVID JENNINGS, et al.,
    Respondents.

Case No. 18-cv-02368-PJH

**ORDER DENYING MOTION FOR ATTORNEYS' FEES**

Re: Dkt. Nos. 23, 24

Petitioner Giovanny Ortega's motion for attorneys' fees under the Equal Access to Justice Act (the "EAJA") came on for hearing before this court on January 9, 2019. Petitioner appeared through his counsel, Marc Van Der Hout and Kelsey Morales. Respondents appeared through their counsel, Jennifer Wang. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

**A.**    **Factual Background**

Petitioner is a native and citizen of El Salvador. His status was adjusted to lawful permanent resident, effective October 1, 1990. After serving 24 years for attempted murder, he was released into ICE custody on April 20, 2017. Immigration and Customs Enforcement ("ICE") initiated removal of petitioner as an alien convicted of an aggravated felony in violation of Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"). Petitioner conceded removability under the INA at a May 1, 2017 hearing, but sought limited relief, which the immigration judge denied on October 2, 2017, and ordered petitioner removed. Petitioner appealed to the Board of Immigration Appeals

("BIA").

While his BIA appeal was pending, on January 30, 2018, petitioner appeared before an immigration judge (the "IJ") for a bond hearing under the then-applicable Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015) ("Rodriguez III"). The same day, the IJ granted petitioner's release upon the posting of a bond and other conditions, including periodic check-ins (the "January 30 Bond Order").

After the Supreme Court's Jennings v. Rodriguez, 138 S. Ct 830 (2018) opinion reversed Rodriguez III, on March 13, 2018, the Department of Homeland Security ("DHS") filed a Motion to Reconsider the January 30 Bond Order with the IJ. On April 5, 2018, the IJ granted the DHS's motion because: 1) a response to the motion had not been filed with the court; 2) good cause had been established for the motion; and 3) petitioner was no longer eligible for a Rodriguez bond (the "April 5 Order"). Dkt. 18-2, Ex. A. Petitioner claims he did not receive a copy of the government's motion until after the IJ issued her order. See Dkt. 1-2, Ex. A at ¶ 7. DHS says it served a copy of the motion on petitioner's counsel. Dkt. 24-1, Ex. A at 15 (Certificate of Service).

Petitioner was subsequently scheduled for re-detention on May 4, 2018, the date of his next scheduled check-in.

**B.     Procedural Background**

On April 19, 2018, Ortega filed his habeas petition in this court and simultaneously filed a motion for a temporary restraining order seeking to enjoin ICE from re-detaining him on May 4, 2018. Dkt. 1; Dkt. 3. In conjunction with those two filings, petitioner filed a stipulation and proposed order setting a briefing schedule on petitioner's motion. Dkt. 3-5. On April 23, 2018, the court signed the proposed order, which set respondents' deadline to oppose as April 26, 2018, petitioner's reply deadline as April 30, 2018, and a hearing for May 2, 2018. Dkt. 13.

On April 25, 2018, the parties filed a second "Stipulation for Extension of Time for Respondents' Response to Petitioner's Motion for Temporary Restraining Order." Dkt. 16. That stipulation explained that "the parties are continuing to work toward an

2

extrajudicial resolution of this case" and accordingly stipulate to continuing respondents' opposition and petitioner's reply deadline to May 10, 2018, and May 16, 2018, respectively, with a hearing set for May 30, 2018. Dkt. 16. The stipulation further stated that "ICE does not intend to re-arrest the [petitioner], absent a material change in circumstances." Dkt. 16.[1] The court signed the parties' attached proposed order on April 26, 2018. Dkt. 17 (In total: "Pursuant to stipulation, it is so ordered[.]").

Also on April 25, 2018, DHS filed an unopposed motion before the Immigration Court to vacate the April 5 Order. Dkt. 18-2, Ex. B. DHS's motion explained to the IJ that petitioner's then-pending petition for habeas corpus alleged "procedural defects relating to the Department's motion to reconsider" and "[i]n the interests of justice, the department expeditiously moves the IJ to vacate the" April 5 Order, and reinstate the January 30 Order. Dkt. 18-2, Ex. B. On May 4, 2018, the IJ granted DHS's motion, vacated the April 5 Order, and reinstated the January 30 Order releasing petitioner on bond (the "May 4, 2018 Order"). Id., Ex. D.

On May 15, 2018, five days after respondents filed their opposition to petitioner's motion for a TRO—and before petitioner filed a reply or made any other filing—the parties stipulated to dismissal of the petition. Dkt. 19. That stipulation recited the above events and stated "[g]iven the above, Petitioner stipulates to dismissal of the petitioner, with the court retaining jurisdiction solely for any attorney's fees motion that may be filed." Dkt. 19. On May 23, 2018, the court signed the parties' attached proposed order. Dkt. 20 (In total: "Pursuant to stipulation, it is so ordered.").

Petitioner now moves for attorneys' fees under the EAJA. In total, petitioner's counsel seeks fees totaling $64,057.05, including $42,409.94 for work on the merits, $21,494.61 for work on the attorneys' fees briefing, and $152.50 in costs.

**DISCUSSION**

---

[1] The parties agree that the stipulation erroneously stated "Respondent" rather than "Petitioner."

3

"Under [the] EAJA, a litigant is entitled to attorney's fees and costs if: (1) he is the prevailing party; (2) the government fails to show that its position was substantially justified or that special circumstances make an award unjust; and (3) the requested fees and costs are reasonable." Carbonell v. I.N.S., 429 F.3d 894, 898 (9th Cir. 2005). Because this court finds that the petitioner was not the "prevailing party" under the EAJA, it finds no cause to reach the second or third requirements.[2]

"[A] litigant must meet two criteria to qualify as a prevailing party. First, he must achieve a 'material alteration of the legal relationship of the parties.' Second, that alteration must be 'judicially sanctioned.'" Carbonell, 429 F.3d 894, 898 (9th Cir. 2005) (quoting Buckhannon Bd. And Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 604-05 (2001)). "On the basis of these criteria, the [Supreme] Court rejected the 'catalyst theory' for the recovery of attorney's fees, holding that relief achieved through voluntary change prompted by a lawsuit 'lacks the necessary judicial _imprimatur_' for a plaintiff to qualify as a prevailing party." Carbonell, 429 at 898 (quoting Buckhannon, 532 U.S. at 605) (emphasis in original); see also Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt., 589 F.3d 1027, 1031 (9th Cir. 2009). The court finds that petitioner has not met that standard.

Assuming for now that petitioner did achieve some "material alteration of the legal relationship of the parties," that relief was not judicially sanctioned. As noted, "[t]he lodestar of this requirement is that 'a plaintiff is [not] a 'prevailing party' if it [only] achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct.'" Klamath, 589 F.3d at 1031 (quoting Buckhannon, 532 U.S. at 601). "In short, the judicial sanction must be an enforceable entitlement to relief. It must allow one party to require the other party to do something it otherwise would not be required to do. To receive what one sought is not enough to prevail: the court must

---

[2] The court notes, however, that while it need not reach the issue, it has serious doubts that petitioner's requested attorneys' fees are "reasonable."

4

require one's opponent to give it." Id. (internal quotation marks and citation omitted; emphasis in original).

Between April 19, 2018, when the petitioner filed his petition, and May 23, 2018, when petitioner voluntarily dismissed his petition, the court issued only two orders, both of which merely granted the parties' stipulation to set a briefing schedule on petitioner's motion for a TRO. Dkts. 13, 17. Thus, the only thing that this court "judicially sanctioned" or stamped with the necessary judicial imprimatur was a briefing schedule. That briefing schedule neither required respondents to do anything nor awarded "much of the relief the [petitioner] sought." Klamath, 589 F.3d at 1031.

Petitioner argues that in fact the parties' April 25, 2018 stipulation provided much of the relief petitioner sought and, therefore, the court's April 26 order stamped that stipulation with the necessary judicial imprimatur. Specifically, petitioner argues that paragraph three of the April 25, 2018 stipulation provides the relief plaintiff sought—that petitioner will not be rearrested until after a hearing on his motion for a TRO. The court is not convinced.

"The material alteration in the legal relationship of the parties must be relief that the would-be prevailing party sought[.]" Klamath, 589 F.3d at 1030. True, a voluntary stipulation, adopted by the district court, to stay deportation proceedings earns an immigrant petitioning for review "prevailing party" status, so long as the stay was the "primar[y] concern" of the case and secured the petitioner "much of the relief he [had] sought." Carbonell, 429 F.3d at 899–900. But that of course does not render every court-sanctioned stipulation sufficient to grant prevailing party status. See, e.g., Klamath, 589 F.3d at 1030-32. "[T]he court must formally indicate that the plaintiff is entitled to some actual relief—legal or equitable relief—in order to establish a material alteration." Id. at 1031.

The April 25, 2018 stipulation does not satisfy that standard. The relevant part of that stipulation states "ICE does not intend to re-arrest the [petitioner], absent a material change in circumstances." Dkt. 17. Petitioner obtaining a statement about ICE's then-

5

intent was not the "primary concern" of the case. Moreover, the court's incorporation of the parties' stipulation into a court order did not materially change the parties' legal relationship because nothing about the stipulation prevented ICE from re-arresting petitioner. Similarly, nothing about the court's scheduling order "indicate[d] that the p[etitioner] [was] entitled to some actual [legal or equitable] relief."[3] And the court certainly did not <u>intend</u> to convert a scheduling stipulation into an order that granted petitioner <u>actual</u> relief.

Petitioner argues that the stipulation and subsequent order prohibited ICE from re-arresting him before the court held a hearing on the TRO. First, as noted, neither the stipulation nor order prohibited ICE from doing anything. Second, even if the order had prohibited ICE from re-arresting petitioner before the court held a hearing on petitioner's motion, that was a voluntary action taken by respondents.

Third, though petitioner strenuously argues to the contrary, preventing his May 4, 2018 re-detention was also not the "'primary concern' of the case [nor did it] secure[ ] the petitioner 'much of the relief he [had] sought.'" <u>Klamath</u>, 589 F.3d at 1030. Petitioner did not merely seek to not be re-arrested until after the court held a TRO hearing, he sought not to be re-arrested at all because he contended that <u>Jennings</u> could not be applied retroactively and/or that constitutional due process required the <u>Rodriguez III</u>-type bond hearing petitioner received. See Dkt. 1 ¶¶ 47-50 (petition's cause of action). Presumably, if the court had found in the respondents' favor on those two issues, petitioner would not contend he was the action's <u>prevailing party</u> simply because he was not re-arrested while his motion for a TRO was briefed and heard. That would be an odd argument indeed. And, in any event, it was the respondents' voluntary motion to vacate the April 5 Order and the IJ's subsequent May 4, 2018 Order that provided the relief the

---

[3] Indeed, like the parties' stipulation, the court's order was entitled "Stipulation for Extension of Time for Respondents' Response to Petitioner's Motion for Temporary Restraining Order; and Order." Dkt. 17.

petition sought.[4]

Lastly, the court notes that accepting petitioner's argument would have substantial deleterious effects on these types of cases. These types of cases are often filed in an emergency when detention is imminent. To prevent rushed briefing and to facilitate extrajudicial resolution, respondents and petitioners often stipulate to a schedule for any motions to be briefed and heard. Petitioners of course only enter those briefing stipulations when they are assured by the respondents that they will not be detained during the interim. If a court order granting a scheduling stipulation was construed to grant petitioner actual relief, thereby rendering petitioner the prevailing party, then respondents would not be inclined to enter into scheduling stipulations or work towards extrajudicial resolution—especially when the scheduling stipulation and subsequent extrajudicial resolution nevertheless bootstraps respondents with a $65,000 bill.

## CONCLUSION

For the foregoing reasons, the court DENIES petitioner's motion for attorneys' fees under the EAJA because petitioner has not demonstrated that he was the prevailing party.

**IT IS SO ORDERED.**

Dated: January 10, 2019

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[4] Though the petition also sought a hearing in this court to resolve, inter alia, his Due Process argument, id. ¶ 50, this court never held a hearing or issued an order on any substantive issue. Thus, it could not have provided that relief to petitioner.

7